# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN SCOTT,<br><br>            Plaintiff,<br><br>            v.<br><br>DISTRICT HOSPITAL PARTNERS, L.P. et al.,<br><br>            Defendants. | Case No. 1:13-cv-00600 (CRC) |

## MEMORANDUM OPINION

Plaintiff Karen Scott, an African-American woman in her fifties, worked at George Washington University Hospital from 2007 to 2010. After she was fired in the wake of an altercation with her supervisor, Scott filed a series of three unsuccessful discrimination charges with the Equal Employment Opportunity Commission. She has now brought suit in this Court against the hospital and its owners, alleging discrimination, retaliation, and hostile work environment on the basis of disability and race, all under federal law, and wrongful termination under District of Columbia common law. The hospital has moved to dismiss all of Scott's claims aside from race discrimination. The Court will dismiss Scott's disability and retaliation claims because she failed to raise them in a timely fashion before the EEOC and, alternatively, because she has failed to allege that she has a legally recognized disability. The Court will also dismiss her wrongful termination claim for failure to state a claim. But the Court will let stand, for now at least, Scott's claim of hostile work environment based on race, which she has pled in barely sufficient detail to survive the hospital's motion to dismiss.

    **I.    Background**

Scott, a Licensed Practical Nurse, worked as a case management associate at the George Washington University Hospital from August 2007 to November 2010, mainly processing

insurance claims. Compl. ¶¶ 6–8, 30. Scott's direct supervisor, Beth Reinhart, who is white, recommended her for the position, and the two worked together amicably at first. Id. ¶¶ 10–11, 14. But that apparently changed following an altercation in April 2010, when Reinhart allegedly "upbraided" Scott for propping open the door to her shared office space due to what Scott perceived as dusty air coming from the ventilation system. Id. ¶ 22.[1] Scott further alleges that Reinhart responded to Scott's complaints about the air with "sudden, unexpected outbursts and tirades" and that she stopped authorizing Scott's overtime hours. Id. ¶¶ 22–23. Scott also claims that, around this time, Reinhart fired several non-white employees and replaced them with white employees. Id. ¶¶ 24–25. When Scott complained about Reinhart's conduct to supervisors, she says she was fired under the pretext of a reorganization plan that replaced Scott's position with one requiring a registered nurse degree. Id. ¶¶ 29–30.

Scott challenged her termination in three sets of charges against the hospital with the EEOC. Proceeding *pro se*, Scott filed her first charge on January 3, 2011. Where asked to identify the bases for the alleged discrimination on the standard EEOC charge form, Scott checked the boxes adjacent to the categories race, religion, and age. She did not check the boxes for disability and retaliation. In the narrative portion of the form, Scott described the "particulars" of her claim, in full, as follows:

> In August 2007, I was hired by George Washington University Hospital as a Case Management Associate. On April 1, 2010, I was suspended for one week by Beth Reinhart, Director, Case Management (White). On November 29, 2010, Ms. Reinhart terminated my employment.
>
> I believe I have been discriminated against (disciplined, discharged) because of my race (Black), religion (Christian) and age (54). I feel the Respondent has violated Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Age Discrimination in Employment Act of 1967, as amended (ADEA).

---

[1] While the Court must take the allegations in Scott's complaint as true at this state of the litigation, it bears noting that Reinhart disputes Scott's version of events. She contends that Scott became argumentative and confrontational after Reinhart asked her not to prop open a door to the workspace that must remain closed for security reasons. Pl.'s Opp. to Mot. to Dismiss Ex. 4.

2

Mot. to Dismiss. Ex. 1.  Scott also completed an intake questionnaire that accompanied the standard EEOC charge form in which she again left blank boxes indicating that her claims of discrimination were based on disability or retaliation.  She did, however, respond to the questing "[w]hy do you believe these actions were discriminatory?" by stating that there was "'dust' in office that was making [her] sick" and that she had "difficulty breathing."  Opp. to Mot. to Dismiss Ex. 7.  Scott also provided the EEOC with notes from a doctor, titled "Disability Certificate[s]," permitting her to stay home from work due to shortness of breath, id. 9 & Ex. 2, as well as emails she sent to hospital management recounting her confrontation with Reinhart.  Id. Ex. 3 & 5.  EEOC intake notes indicate that Scott alleged that Reinhart had a practice of firing non-white employees and replacing them with white employees, that Reinhart "treat[ed] younger workers better than [Scott,]" and—apparently in support of her religious discrimination claim—that Reinhart "might be into witchcraft or be a witch" because "black dust emits from [her.]"  Id. Ex. 8.

Scott filed an amended EEOC charge on August 26, 2011, after securing counsel, which added allegations of a hostile work environment and removed religion as a basis for discrimination.  Mot. to Dismiss Ex. 2.  Once again, Scott (and her lawyer) left blank the boxes on the charge form for disability discrimination and retaliation.  The narrative portion of the amended charge did not elaborate on the facts underlying her initial charges based on race and age, and did not mention disability as a basis for the new hostile work environment charge.

Over a year later, on January 7, 2013, Scott filed a second amended EEOC charge, alleging discrimination and retaliation based on race and disability, as well as a hostile work environment. Opp. to Mot. to Dismiss Ex. 6.  Scott's counsel argued at the time that the disability claim related back to Scott's 2011 charges, but the EEOC considered her disability claim untimely.  The EEOC then dismissed Scott's allegations in all three of her EEOC charges, explaining that it was closing

3

its file on the charges because it was "unable to conclude that the information obtained establishe[d] violations of the statutes." Mot. to Dismiss Ex. 3.

On April 30, 2013, Scott filed a five-count complaint in this Court. Count One alleges that the hospital failed to accommodate, and ultimately fired her because of, a disability—"shortness of breath" caused by poor air quality in her workspace—in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Count Two alleges that that she was terminated because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. Count Three alleges that the hospital maintained a hostile work environment based on race, disability, and age. Count Four alleges that the hospital terminated Scott in retaliation for having complained about her mistreatment by Reinhart. And Count Five alleges wrongful termination under District of Columbia common law. The hospital has moved to dismiss, or alternatively, for summary judgment, with respect to all of Scott's claims except Count Two for race discrimination under Title VII.

**II.     Standard of Review**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 556. The complaint must contain more than "a formulaic recitation of the elements of a cause of action" and "naked assertion[s]" devoid of "further factual enhancement." Id. at 555, 557. The Court assumes the plaintiff's factual assertions to be true and draws all inferences in the plaintiff's favor. Id.

Motions to dismiss for failure to exhaust administrative remedies are properly addressed as motions to dismiss for failure to state a claim. See Marcelus v. Corr. Corp. of Am./Corr. Treatment

4

Facility, 540 F. Supp. 2d 231, 235 (D.D.C. 2008). The defendant bears the burden of proving that the plaintiff failed to exhaust administrative remedies by a preponderance of the evidence. E.g., Hudson v. Children's Nat. Med. Ctr., 645 F. Supp. 2d 1, 4 (D.D.C. 2009) (citing Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)).

While the Court cannot consider materials outside the pleadings when deciding a motion to dismiss without converting it to a motion for summary judgment, Fed. R. Civ. P. 12(d), it can "consider documents attached to or incorporated by the complaint in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment" including documents referenced or cited to in a complaint. Marcelus, 540 F. Supp. 2d at 235 (citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997)). Because Scott refers to her three EEOC charges and their accompanying documents in her complaint, Compl. ¶¶ 33–36, the Court deems them incorporated into her complaint and will consider them without converting the hospital's motion into one for summary judgment.

### III. Analysis

#### A. Disability and Retaliation Claims (Counts I and IV)

The Court turns first to Scott's disability and retaliation claims. The hospital argues that both claims should be dismissed because Scott did not raise them in a timely fashion before the EEOC and thus failed to exhaust her administrative remedy. Scott responds that, even though her original and first amended EEOC charge did not explicitly allege disability discrimination or retaliation, the EEOC was nonetheless put on notice of those charges by the intake questionnaire and other materials that she submitted with her initial charge. She also argues that her second amended charge in 2013, which did include disability and retaliation claims, "related back" to her 2011 charges.

To bring a federal action under the ADA, a plaintiff must first file an EEOC charge and await a response from that agency. Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997). As with Title VII, a complainant must file the EEOC charge, at most, 300 days after the alleged unlawful practice occurred. Smith v. Janey, 664 F. Supp. 2d 1, 9 (D.D.C. 2009), aff'd sub nom., Smith v. Rhee, 09-7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010). Likewise, "[r]etaliation claims that occurred prior to the filing of a claim must be administratively exhausted" through EEOC proceedings. Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 278 (D.D.C. 2011) (collecting cases).

A civil lawsuit "following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and [that] grow[] out of such allegations.'" Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)). Although the administrative charge requirement is not intended to place "a heavy technical burden" on plaintiffs, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the [EEOC] administrative process." Id. (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)).

As described above, nothing on the face of Scott's two 2011 EEOC charges indicated that she was basing her claims on disability discrimination or retaliation. She neither checked the "disability" or "retaliation" boxes on the EEOC charge form nor included any factual allegations whatsoever in the narrative portions of the charge that would suggest a claim on either basis. It was not until her 2013 EEOC charge, coming a year after the 300-day statutory deadline to file had passed, that she alleged discrimination on the basis of disability and retaliation. The 2011 charges themselves, then, did not place the EEOC on notice that Scott was also claiming disability discrimination and retaliation.

The inquiry does not end there, however. Scott also points to several documents that she submitted to the EEOC in connection with the filing of her initial charges, which she claims raised both issues. Regarding disability discrimination, Scott emphasizes the EEOC questionnaire that accompanied her first EEOC charge, which stated that office dust made it difficult to breathe, and the attached "disability certificates" that excused her from working. Opp. to Mot. to Dismiss. Ex. 2 & 7. But these materials were not sufficient to put the EEOC on notice that Scott was alleging discrimination on the basis of disability. That is so because Scott affirmatively marked in her 2011 EEOC questionnaire that she was *not* disabled and did not mark "disabled" as a basis for discrimination in either of her 2011 EEOC charges. Mot. to Dismiss Ex. 1 & 2; Opp. to Mot. to Dismiss Ex. 7. To demonstrate notice of her retaliation claim, Scott points to an email attached to her initial 2011 EEOC charge in which she complained to her superiors about her difficulty breathing and her altercation with Reinhart. Opp. to Mot. to Dismiss at 13–14 & Ex. 5. Again, however, this email did not put the EEOC on notice that Scott was alleging retaliation because it did not link the subject matter of the complaint—an argument with Reinhart over bothersome dust in the office—to her later termination. For reasons explained in the following section, moreover, the email does not implicate protected activity under employment anti-discrimination laws. Scott's failure to allege disability or retaliation in her EEOC charge cannot be cured by pointing to these extraneous documents that do not suggest claims of disability discrimination or retaliation. See Park, 71 F.3d at 907–908; Smith, 664 F. Supp. 2d at 9.

Scott also argues that she exhausted her administrative remedy because her 2013 EEOC charge "related back" to her earlier charge. EEOC regulations provide that an amended charge may "relate back to the date the charge was first received" if the amendment is to "cure technical defects or omissions" or "grow[s] out of the subject matter of the original charge." 29 C.F.R. § 1601.12. As the EEOC found when it rejected Scott's second amended charge as untimely, her 2013 charge

meets neither of these criteria. Because disability discrimination is a new substantive theory, separate from her 2011 EEOC charge of age and race discrimination, it does not grow out of the subject matter of the original charge See Wilson v. Commc'ns Workers of Am., 767 F. Supp. 304, 306 (D.D.C. 1991) (because the "amendment added a new substantive theory which is fundamentally distinct from the original race discrimination charge[,]" it "did not relate to, or grow out of [Plaintiff's] original EEOC charge"). And her 2013 race-based retaliation claims do not relate back because "[d]iscrimination and retaliation claims are considered distinct types of claims that must be raised independently if the retaliation occurred prior to the filing of the administrative charge." Ndondji, 768 F. Supp. 2d at 279 (citing Ponce v. Billington, 652 F. Supp. 2d 71, 73–74 (D.D.C. 2009) (holding that retaliation claim could not relate back to a timely discrimination claim based on the same subject matter)). Scott's citation to Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992), provides her no assistance because that case holds that a plaintiff can bring a retaliation claim for the first time in federal court when retaliated against *for filing an EEOC charge alleging discrimination*. Id. at 590. Here, the alleged retaliation occurred before any of Scott's interactions with the EEOC, and should have been brought to that agency in the first instance.

To sum up, because Scott's 2011 charges did not give notice of alleged disability discrimination or retaliation and her 2013 charges introduced these claims as new substantive theories not found in the 2011 charges, Scott failed to raise these claims in a timely fashion before the EEOC. The Court therefore will dismiss Counts I and III of the complaint.

### B. Failure to Plead an ADA Violation

Assuming for the sake of argument that Scott properly raised her ADA claims in her 2011 EEOC complaint, they still must be dismissed for failure to plead discrimination on the basis of a disability. To state a claim under Title II of the ADA, a plaintiff must allege, among other things, that she is a "qualified individual with a disability." E.g., Alston v. Dist. of Columbia, 561 F. Supp.

8

2d 29, 37 (D.D.C. 2008). An individual has a "disability" under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) is regarded as having such an impairment." 42 U.S.C. § 12102(1). EEOC regulations further explain that the physical impairment must "substantially limit[] the ability of an individual . . . as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Scott fails to plead that she has a condition constituting a disability under the ADA. First, Scott fails to allege any facts to support a reasonable inference that the dust in her office "triggered" a latent medical condition, Compl. ¶ 39, as opposed to the far more logical conclusion to be drawn from the events described in her complaint: that she simply experienced shortness of breath as a symptom of inhaling dust. See Twombly, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Second, to prove disability under the ADA, Scott must allege facts showing that she had a physical impairment that substantially limited a major life activity *as compared to the general public*. 29 C.F.R. § 1630.2(j)(1)(ii). While difficulty breathing, if severe enough, can certainly constitute an impairment of a major life function, Scott alleges that she had difficulty breathing when she had to sit in a poorly ventilated and dusty office along with the other co-workers who shared her office. Compl. ¶¶ 15–19. Because this impairment—namely the effect of dust on breathing—is shared with the general public, it is not a disability under the ADA. Desmond v. Mukasey, 530 F.3d 944, 955 (D.C. Cir. 2008) ("plaintiffs must show that their limitation was substantial 'as compared to the average person in the general population.'" (quoting Singh v. George Washington Univ. Sch. of Med., 508 F.3d 1097, 1100–04 (D.C. Cir. 2007))).

Third, Scott's alleged impairment cannot be said to be "substantially" limiting because she alleges that she has difficulty breathing only while in a particular office. See Haynes v. Williams, 392 F.3d 478, 483 (D.C. Cir. 2004) (impairment does not substantially limit a major life function

9

"[i]f the impact of an impairment can be eliminated by changing the address at which an individual works"); Ellis v. Georgetown Univ. Hosp., 723 F. Supp. 2d 42, 49–50 (D.D.C. 2010) ("Even if working in the Emergency Department triggered uncontrollable asthma, that Ellis could mitigate this effect by working in a different location means that she is not disabled under the law."). In short, Scott's allegations that she, along with her co-workers, had difficulty breathing when working in a specific locale that was extremely dusty are insufficient to plead a disability under the ADA.

          C.   Hostile Work Environment

To state a claim for hostile work environment, a plaintiff must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)). To assert a claim for hostile work environment, the plaintiff must demonstrate "'some linkage between the hostile behavior and the plaintiff's membership in a protected class.'" Grosdidier v. Chairman of the Broad. Bd. of Governors, 774 F. Supp. 2d 76, 109 (D.D.C. 2011), aff'd in part sub nom, 709 F.3d 19 (D.C. Cir. 2013) (quoting Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)). Having a disability, as defined by the ADA, might render a plaintiff a member of a protected class.

Because Scott's alleged difficulty breathing is not a disability under the ADA, see supra, she has failed to demonstrate her membership in a protected class and therefore failed to allege a hostile work environment with respect to disability discrimination. See Grosdidier, 774 F. Supp. 2d at 109. As to race discrimination, however, Scott pleads sufficient facts to overcome the hospital's motion

to dismiss. She alleges that her immediate supervisor, Reinhart, treated non-white employees more favorably and that she discriminatorily revoked Scott's overtime privileges. Compl. ¶¶ 23–25. Scott further alleges that Reinhart repeatedly upbraided Scott and subjected Scott to "tirade[s] of abusive and degrading comments[.]" Id. These allegations, while lacking in detail, are just barely sufficient to satisfy Scott's burden at this stage to plead facts that, taken as true, allow for a reasonable inference of a violation of Title VII for hostile work environment.

D. Failure to State a Cognizable Claim in Count V

Scott's final claim in her complaint is titled a "CONTINGENT PENDANT COUNT FOR WRONGFUL DISCHARGE UNDER DISTRICT OF COLUMBIA LAW" and alleges a "violation of the public policy as set out in the federal statutes . . . and as such was a wrongful discharge[.]" Compl. ¶ 58. Scott adds that this claim is "to be enforced only if the federal violations set out in the previous counts are not enforced and in which case this pendant count is then referred to or taken up in the municipal court system of the District of Columbia[.]" Id. While it is unclear precisely what Scott is attempting to accomplish with this language,[2] at bottom, this appears to be a claim for wrongful discharge under D.C. law.

"Wrongful discharge" in the District of Columbia can mean: (1) a termination that violates contractual provisions; (2) a termination that violates a statute; or (3) a termination that violates public policy because the employee was fired for refusing to break the law at the employer's direction. Davis v. Gables Residential/H.G. Smithy, 525 F. Supp. 2d 87, 101 (D.D.C. 2007) (collecting cases). The first and third definitions are inapplicable here, and the federal statutes Scott sues under "provide their own express remedies for [the hospital's alleged] misconduct and

---

[2] Certainly, Scott cannot invoke this Court's jurisdiction while asking it not to adjudicate some of her claims. And, whatever her counsel may assert in the complaint, Scott cannot somehow hold a claim in reserve so that if this Court rules against her on the merits she could then bring the case to the D.C. Superior Court for a second bite of the apple.

11

therefore cannot serve as predicates for a common law wrongful discharge claim" under D.C. law. Hoskins v. Howard Univ., 839 F. Supp. 2d 268, 281 (D.D.C. 2012) (collecting cases). This claim will therefore be dismissed.

**IV.     Conclusion**

For the reasons above, the Court will grant the hospital's motion to dismiss counts I, IV, and V and deny the motion as to count III with respect to Scott's claims of hostile work environment on the basis of race. It will grant Scott's motion for leave to file a surreply. The Court will issue an order consistent with this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:     July 28, 2014